NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0735n.06

No. 10-5198

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Oct 27, 2011*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                )
                                         )
    Plaintiff-Appellee,                   )
                                         )
v.                                       )    ON APPEAL FROM THE UNITED
                                         )    STATES DISTRICT COURT FOR THE
CHRISTINA ROSE DENHAM,                   )    EASTERN DISTRICT OF KENTUCKY
                                         )
    Defendant-Appellant.                  )

Before: DAUGHTREY, COOK, and KETHLEDGE, Circuit Judges.

**PER CURIAM.** In this sentencing appeal, defendant Christina Denham challenges

the 43-month sentence imposed by the district court following her entry of an *Alford* plea

to a charge of "conspiracy to knowingly threaten to cause bodily injury to another person

with the intent to retaliate against that person for providing information related to the

possible commission of a federal offense to a law enforcement officer." Denham contends

that her sentence was both procedurally and substantively unreasonable. For the reasons

set out below, we disagree and, therefore, affirm the district court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Working in conjunction with federal agents, Kentucky State Police officers arrested

one Judy Wilder on drug-trafficking charges, based on information they received from a

confidential informant. That same day, the defendant, Wilder's niece visited Wilder in jail and, in her own words, "saw [that] we couldn't get her out, and she was so scared. She was coming off pills herself and she was crying and she was begging us to get her, and we couldn't, and I just – I was mad." Rather than channeling that anger in an appropriate manner intended to assist her aunt, however, Denham took possession of her aunt's cell phone and managed to identify the confidential informant from his telephone number. She and an accomplice then embarked on a five-day spree of telephoning the informant and threatening both him and his family.

The first such message left by the defendant on the informant's voice mail provides the flavor of each of the later messages as well. In that initial call, Denham exclaims:

> You know what happens to rats? You think you're safe? Huh? Do you really think you're safe? You'll be found. Judy is fifty-five years fucking old, do you know that? You mother fuckers are dead. You're dead. Do you understand me? You're dead. Do you hear that? You're fucking dead. And you won't know where it's coming from. Next thing you know you'll be fucking laying with your God-damn hands cut off.

As a result of these calls, a federal grand jury indicted Denham for conspiring to threaten another person with bodily injury in retaliation for providing information to a law enforcement officer about a possible federal offense. *See* 18 U.S.C. §§ 1513(f) and 1513(b)(2). Denham expressed remorse for her actions, did not contest the illegality of the acts she undertook, and attempted to plead guilty to the charged offense. The district court initially refused to accept the plea, however, because Denham claimed to have no

knowledge that her aunt could be charged with a federal drug-trafficking offense, and because the court believed that such knowledge was a required element of the offense. Later, the district court satisfied itself that the prosecution could indeed establish that the defendant was aware of the involvement of federal agents in the arrest of Denham's aunt. Consequently, the court accepted Denham's plea offered pursuant to the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970). Under that plea, the defendant did not actually admit guilt but agreed that the prosecution could establish the required elements of the offense.

At sentencing, the district court enhanced Denham's base offense level by eight levels in light of that court's finding that the threats communicated to the confidential informant were made "in order to obstruct the administration of justice." *See* USSG § 2J1.2(b)(1)(B). Given the defendant's criminal history, that enhancement, in combination with Denham's acceptance of responsibility, yielded a guideline sentencing range of 37-46 months in prison. The district court noted that if Denham "were an ordinary defendant, the Court would think a sentence in the range of about 80 to 120 months would be appropriate in this case." Considering the defendant's history and characteristics, however, the district judge determined that a sentence within the relevant guideline range was justified and thus imposed a prison sentence of 43 months. Denham now appeals from that determination, contending both that the eight-level enhancement of her base offense level was improper and that the 43-month sentence was substantively unreasonable.

**DISCUSSION**

On appeal, we review a defendant's sentence for reasonableness, using the deferential abuse-of-discretion standard. *See United States v. Pearce*, 531 F.3d 374, 384 (6th Cir. 2008). Such review "has both a procedural and a substantive component." *United States v. Erpenbeck*, 532 F.3d 423, 430 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. A review for substantive reasonableness "will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* Furthermore, "we may apply a rebuttable presumption of reasonableness to sentences within the Guidelines," *Pearce*, 531 F.3d at 384, but may not reverse a district court's sentencing determination simply because we "might reasonably have concluded that a different sentence was appropriate." *Gall*, 552 U.S. at 51.

In her procedural challenge to her sentence, Denham contends that the threatening phone calls made to the confidential informant were simply manifestations of anger and revenge and were not made "in order to obstruct the administration of justice." She thus argues that the evidence in the record does not justify an eight-level increase in the

defendant's base offense level under § 2J1.2(b)(1)(B) of the United States Sentencing Guidelines.[1]  The background to the commentary on that guideline section recognizes, however, that "[n]umerous offenses of varying seriousness may constitute obstruction of justice," including transmission of a "mere threat" "to influence testimony."  USSG § 2J1.2, comment. (backg'd).

In examining this claim, we review the district court's findings of fact for clear error. *See United States v. Thompson*, 586 F.3d 1035, 1038 (6th Cir. 2009).  Thus, we may reverse such a factual determination only if we are "left with the definite and firm conviction that a mistake has been committed."  *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008).  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (citations omitted).  The determination of whether specific facts actually constitute an obstruction of justice is, however, a mixed question of fact and law that we review *de novo*.  *See United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir.), *cert. denied*, 130 S.Ct. 476 (2011) (citing *United States v. Roberts*, 243 F.3d 235, 237 (6th Cir. 2001) (*per curiam*)).

---

[1]Guideline § 2J1.2, applicable to violations of 18 U.S.C. § 1513, designates a base offense level of 14, *see* USSG § 2J1.2(a), and further provides for an increase of eight additional levels "[i]f the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice."  USSG § 2J1.2(b)(1)(B).

In this case, the district court did not err in concluding that the threatening telephone calls obstructed the administration of justice. The informant would have been an integral government witness had the case against Denham's aunt gone to trial. Thus, the threats to kill or maim the informant and his family would naturally have caused him to reflect on the benefits and costs of providing testimony against Judy Wilder and would obviously have given him pause to reconsider before doing so.

Moreover, the commentary to guideline § 3C1.1, which deals with "obstructing or impeding the administration of justice," denominates "threatening, intimidating, or otherwise unlawfully influencing a . . . witness, . . . or attempting to do so" as one example of the type of conduct to which that adjustment applies. *See* USSG § 3C1.1, comment. (n. 4(A)). Admittedly, § 3C1.1 reaches obstructive conduct only with respect to the particular offense of conviction, while § 2J1.2(b)(1)(B) concerns itself with conduct intended to obstruct the conduct of other proceedings. Nevertheless, § 3C1.1's interpretation of the idea of "obstructing the administration of justice" provides strong support for the conclusion that Denham's threats to the confidential informant should likewise be considered an attempt to obstruct the administration of justice under § 2J1.2(b)(1)(B) of the guidelines. Given the certainty that the informant would have been a witness against Judy Wilder had her case gone to trial, the district court did not err in concluding that the defendant's phone calls to him "threatened] to cause physical injury to a person . . . in order to obstruct the administration of justice." The sentence imposed upon Denham thus was not procedurally unreasonable.

The defendant also alleges that the 43-month sentence she received is substantively unreasonable in light of the mitigating factors that she presented to the district court. Specifically, Denham argues that her actions were caused, in part, by pre-menstrual dysphoric disorder and by her addition to drugs. She also highlights the facts that she has completed some college course work, that she cares for two disabled members of her family, and that she has been gainfully employed. The district judge, however, clearly considered those factors and brought them to bear on his decision not to sentence Denham to 80-to-120 months in prison, a sentence he felt would be appropriate if Denham "were an ordinary defendant." Instead, the judge sentenced Denham within the applicable guideline range "based on [her] history and characteristics . . .[,] the U.S. desire to promote respect for the law, provide just punishment for the offense, and reflect the seriousness of the offense." Such a sentence is presumed to be reasonable, and Denham has offered no evidence to rebut that presumption.

## CONCLUSION

The record on appeal establishes that the 43-month sentence imposed upon the defendant was both procedurally and substantively reasonable. We therefore AFFIRM the judgment of the district court.